UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DELVYN LIRIANO,<br><br>Defendant | Criminal No. 25-cr-10086-RGS |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION**

The government submits this memorandum in support of its recommendation for **57 months of incarceration** for the Defendant, followed by three years of supervised release. This recommendation reflects the seriousness of the offense, the need for deterrence and punishment, and is sufficient but not greater than necessary to accomplish the goals of sentencing. The government's recommendation reflects a guideline sentence that is consonant with justice and accords with the sentencing factors under Section 3553(a).

**THE ADVISORY SENTENCING GUIDELINES**

The government agrees with the offense level calculation provided by U.S. Probation, which calculated the offense level in the final Presentence Report to be 23 (PSR ¶¶18-27). With a criminal history score of four, the criminal history category is III (PSR ¶¶33-35). Therefore, the guideline sentencing range ("GSR") calculated by Probation is 57 to 71 months (PSR ¶58). The Plea Agreement entered into by the parties under Fed. R. Crim. P. 11(c)(1)(C) calls for a sentencing range of between 46 and 57 months.

**ARGUMENT**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of

1

sentencing set forth in § 3553(a)(2).  Among those factors are the "nature and circumstances of the offense," promoting respect for the law, and providing just punishment.  *See* 18 U.S.C. § 3553(a)(2)(A).  The sentence must also afford "adequate deterrence" for both the defendant and others.  *See* 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct").  Lastly, the sentence must protect the public from the further crimes of the Defendant.  *See* 18 U.S.C. § 3553(a)(2)(C) ("protect the public from further crimes of the defendant").  Consideration of the § 3553(a) factors demonstrates that a sentence of 57 months is sufficient, but not greater than necessary, to meet the goals of sentencing.

### A.    Nature and Circumstances of the Offenses

As described in the presentence report, at the time of the offense the Defendant was then on probation for a serious domestic violence incident involving a firearm. *See* PSR ¶32.  For that case, he received the benefit of effectively a time-served disposition. Despite this opportunity, the Defendant returned to firearms.

In this case, the Defendant was not only in possession of a firearm, but it was a completely functional machinegun: a Glock equipped with a machinegun conversion device. The functionality of this type of weapon has no place in an urban community – they are practically illegal in all circumstances. Videos of these type of weapons can be found all over the internet and they are horrific to behold.[1] Automatic handguns cannot be accurately aimed and it is difficult to discharge single rounds with any precision. In short, these weapons are designed shoot large number of projectiles indiscriminately at short range, given the diminishing accuracy of pistol caliber

---

[1] *See e.g.* https://www.youtube.com/watch?v=Tmyk9qm3wkQ; https://www.youtube.com/watch?v=vhv-7rYzG-8. Numerous articles around the country describe law enforcement's efforts to curb these devices.  https://www.waaytv.com/news/federal-law-enforcement-warns-about-the-dangers-of-glock-switches-in-alabama/article_a5479616-456c-11ef-b522-972834c431a0.html

cartridge at extended distances. They are particularly deadly in the context of large crowds. Glock switches are the tools of urban gang violence and street terrorism with an outrageous potential for collateral damage. These weapons have no place in an urban community and certainly must be kept out of the hands of convicted violent felons like the Defendant.

This is the type of weapon that the Defendant chose to bring with him in January 2025, while on probation for pointing a gun at his girlfriend and threatening to kill, as he drove around Everett and Malden with marijuana packs and over $4,000 cash. However, this Defendant did not just have a fully automatic handgun. The Defendant chose to equip that machinegun with an extended magazine loaded with 24 rounds of .40 caliber ammunition. As can be seen in the various YouTube videos referenced previously, a firearm equipped with a Glock switch can discharge 24 rounds in about one second. The potential for violence cannot be overstated and must be met with a significant prison sentence.

Overall, this case is extremely serious and reflects an escalation in criminal conduct that is compounded by it taking place while the Defendant was on Probation for pointing a firearm at his girlfriend and threatening to kill her. The nature and circumstances call for a sentence that is a meaningful escalation above the few months of incarceration he actually served in the House of Correction (PSR ¶32) and Department of Youth Services.[2]  In the government's estimation a sentence of 57 months properly reflects the nature and circumstances of the offense and the seriousness of the criminal conduct.

### B.    Criminal History, Specific Deterrence, Punishment

This is the Defendant's second felony criminal conviction involving a firearm since turning

---

[2] *See* PSR ¶¶29-31 (noting juvenile cases not resulting in commitment despite violating probation, and only approximately one year of DYS commitment to age 19 when Defendant was age 18).

18.  While there have been other arrests suggesting antisocial and criminal behavior has been the Defendant's primary focus, the convictions alone suggest leniency is no longer a permissible option for this Court.

The juvenile convictions of witness intimidation, assault and battery, and threats to commit a crime at age 17 all bespeak a young man who is prone to violence.  That proclivity for violence in his youth became reality with the domestic violence and firearm offenses that he committed as an adult. It bears repeating and emphasis: the Defendant pulled out a gun, pointed it at his girlfriend's face and threatened to kill her, because he accused her of associating with a rival gang member. *See* PSR ¶32. Another chilling aspect that case: "The defendant also noted that he was on house arrest and would enlist the services of other gang members to kill her." PSR ¶32. The time for a significant and serious intervention is now.

Based on the Defendant's history and lack of deterrence by what has gone before, incarceration is well-warranted. For example, the prior term of 2 months for the domestic violence offense with the promise to not offend while on probation was certainly insufficient to deter the Defendant. So too were the obviously ineffective measures imposed by the juvenile court. Indeed, these past cases appear to only have emboldened the Defendant.

Moreover, alternative paths such as services through ROCA and a Vocational Academy have been repeatedly spurned by the Defendant, despite these alternatively literally paying him to participate and not commit crimes. *See* PSR ¶53 ("defendant engaged with ROCA, a youth services program for court-involved individuals, in Lynn where he participated in various services and was also paid $18 per hour as an employee."; "For a short period of time, the defendant also attended and worked for the Topsfield Vocational Academy in Topsfield, where he earned $20 per hour."). The government's recommendation reflects a simple solution to what is, at bottom, a simple

problem presented by a Defendant who will not stop committing crimes: incarceration.

Had this Defendant not elected to plead guilty to a serious sentence at the earliest opportunity and demonstrated a willingness to accept responsibility and a justly deserved punishment, he could have expected to spend closer to a decade in prison through a higher recommendation from the government, various mandatory minimum penalties (e.g. Section 924(c)) that might have been further investigated, and drug charges related to the not insignificant quantity of marijuana found in his backpack.  Perhaps, the government should have sought a longer period of incarceration and not entered in the Plea Agreement that limited the Defendant's sentencing exposure.  The wisdom of that decision is solely in the hands of the Defendant. However, he can certainly expect to spend additional years in prison if he reoffends on supervised release. This too should deter the Defendant for the foreseeable future.

The government's recommendation here breaks from the past remedies that did nothing to cure the problem of the Defendant's recidivism. The Defendant's criminal history must be reflected in the sentence, he must be specifically deterred, and he needs to be punished. Fifty-seven months in federal prison is a sufficient means to meet these goals of sentencing.

**C.      General Deterrence, Promotion of Respect for the Law, and Public Protection**

General deterrence and promotion of respect for the law must also be considered, and this Court should be mindful of the message that this sentence will send to drug dealers, gang members, and those possessing firearms in furtherance of their drug trade.  A significant sentence to approximately 5 years in federal prison is the proper message to send, and it is being sent in a clear and prompt manner in this case.

To his credit, the Defendant signaled his intention to plead guilty relatively promptly after his arrest. The multi-year sentence he will sends a deterrent message to other gang members and

those who would possess firearms, and machineguns in particular.

A sentence of nearly five years will also protect the public from the Defendant, and the guns, and violence that he contributed to society. Indeed, his life has been characterized by crime, violence and other negative activities, and the time for it to end is now. *See* PSR ¶¶52 (no vocational or special skills), 53 (no employment history). Apart from preventing the Defendant from victimizing others through his crimes by being incarcerated, this sentence will also hopefully curb the possibility that the Defendant returns to crime in the future, further protecting the public. Lastly, a swiftly imposed 57-month sentence – given the Defendant's acceptance of responsibility, and willingness to plead guilty without any litigation – certainly promotes respect for the law.

## CONCLUSION

Based upon the foregoing, the government requests that the Court impose a sentence of 57 months, followed by three years of supervised release.

Respectfully submitted,

LEAH B. FOLEY,
United States Attorney

By:    */s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Philip A. Mallard
PHILIP A. MALLARD
Assistant U.S. Attorney

Date:   January 8, 2025

7